The STATE of North Dakota, Plaintiff and Appellee,

v.

Gary BUCKLEY, Defendant and Appellant.

Cr. No. 827.

Supreme Court of North Dakota.

Oct. 20, 1982.

John M. Olson, State's Atty., Bismarck, for plaintiff and appellee; argued by Asst. State's Atty. Gail Hagerty.

Pulkrabek & Tuntland, Mandan, for defendant and appellant; argued by Thomas M. Tuntland, Mandan.

SAND, Justice.

The defendant, Gary Buckley, appealed from a judgment of conviction and the resulting sentence for the offense of gross sexual imposition, a violation of North Dakota Century Code § 12.1–20–03, a class B felony.

Buckley admitted that he had sexual intercourse with the victim in her apartment on 26 June 1981; however, he testified and asserted that the intercourse was consensu-

al, which was contrary to the assertion of the victim.

The victim's testimony, in substance, established that Buckley threatened and attacked her and dragged her into her bedroom and raped her. The scratches on her body and reddening of her face, according to the victim's testimony, occurred when Buckley dragged her into the bedroom.

Buckley's testimony, in substance, established that he and the victim were in her apartment and started kissing each other and then went into the victim's bedroom and engaged in consensual sexual intercourse. According to Buckley's testimony, the marks on the victim were caused when he told the victim that he was going to inform his "wife"[1] that he and the victim had engaged in sexual relations, after which the victim "went beserk" and had to be physically restrained by him. Buckley further testified that the victim also threatened to charge him with rape at that time.

A jury ultimately returned a verdict of guilty and Buckley was sentenced to four years in the state penitentiary. Buckley appealed to this court.

The only issue raised by Buckley was that he was denied his constitutional right to confrontation when the trial court refused to allow any inquiry as to the victim's history of treatment for a mental condition.

Buckley made a pretrial motion for a psychiatric examination of the victim. Buckley's attorney submitted an affidavit in support of that motion which provided, in part, as follows:

"3. That the affiant has reason to believe that the complainant is a pathological liar. I have ascertained that she is emotionally unstable and has exhibited a pathological hate towards men in general. That the affiant believes through observations of the complaining witness on the witness stand that she was lying about past sexual conduct with the Defendant, emotionally unstable, and that her life is supported with various psychological assistance such as Al-anon."

The court, after a hearing, denied Buckley's motion; however, the court permitted Buckley to submit, through the state's attorney, ten questions to be answered by the victim. The court further stated that "if those answers . . . show sufficient cause and reason, you [Buckley] may renew your motion for the psychiatric examination."

Through the ten questions, Buckley learned that the victim had been under the care of a psychiatrist for severe depression, diagnosed as depressive neurosis, and had been hospitalized for that condition for a period in excess of two weeks in July and August of 1979 (two years before the incident in question). An affidavit of Dr. J. Thakor, the psychiatrist who treated the victim in 1979, was submitted, along with responses to the ten questions. That affidavit provided, in part, as follows:

"That although he has not seen or treated [the victim] since August of 1979, and using as a base the information available to him, Dr. Thakor has no reason to believe (as a result of his treatment of her or knowledge of her) that she would not be a competent and truthful witness. Further, he does not believe the fact that she was diagnosed as suffering from depressive neurosis and sought treatment in 1979 should raise any inference as to her competency or ability to accurately recall and truthfully relate events while under oath in a court of law at this time."

Buckley did not renew his motion for a psychiatric examination of the victim.

During trial, Buckley attempted to cross-examine the victim concerning her past psychiatric care. The following questioning took place:

"Q. Now, you have been under the care of a psychiatrist in the past, haven't you?

"MS. HAGERTY: Your Honor, I object. There is no relevance.

"THE COURT: I don't know what the purpose is. Will you approach the bench, please.

---

1. Buckley was living with Colleen Mells and considered her his wife although they were not married.

"[A conference was had at the bench between the court and counsel, off the record.]

"[At the bench, on the record.]

"THE COURT: Mr. Tuntland has suggested that he is asking this for the purpose of attacking credibility. I have indicated I am going to sustain the objection. So do not pursue the matter.

"[In open court.]

"THE COURT: I will sustain the objection."

We believe some observations on a psychiatric examination of a complaining witness in a rape case will be helpful in resolving the issue raised by Buckley.

Some authorities have suggested that the complaining witness, in a case relating to a sex offense, should *always* be compelled to submit to a psychiatric examination. See, 3A, Wigmore, Evidence, § 924a (Chadbourn rev. 1970). However, later case law, in what seems to be a majority of states, does not follow this concept. See, *State v. Wahrlich,* 105 Ariz. 102, 459 P.2d 727 (1969); *Ballard v. Superior Court,* 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416 (1966); *People v. King,* 41 Colo.App. 177, 581 P.2d 739 (1978); *McDonald v. State,* 307 A.2d 796 (Del.1973); *State v. Filson,* 101 Idaho 381, 613 P.2d 938 (1980); *People v. Glover,* 49 Ill.2d 78, 273 N.E.2d 367 (1971); *State v. Gregg,* 226 Kan. 481, 602 P.2d 85 (1979); *People v. Davis,* 91 Mich.App. 434, 283 N.W.2d 768 (1979); *State v. Boisvert,* 119 N.H. 174, 400 A.2d 48 (1979); *State v. Romero,* 94 N.M. 22, 606 P.2d 1116 (N.M.App.1980); *People v. Souvenir,* 373 N.Y.S.2d 824, 83 Mis.2d 1038 (Crim.Ct. City of N.Y. 1975); *State v. Wounded Head,* 305 N.W.2d 677 (S.D.1981); *Forbes v. State,* 559 S.W.2d 318 (Tenn. 1977); *State v. Demos,* 94 Wash.2d 733, 619 P.2d 968 (1980). *See,* Requiring Complaining Witness in Prosecution For Sex Crime To Submit To Psychiatric Examination, Annot., 18 A.L.R.3d 1433 (1968). These authorities stand for the proposition that the trial court has discretion to order a psychi-

atric examination of a complaining witness where compelling reasons are shown on the record.

These authorities reflect, and apparently are in response to, the increased recognition that sex offense victims already have been put through a traumatic experience and are subject to further traumatic experience by being subjected to cross-examination concerning the incident. It necessarily follows that needless possibilities for increasing that trauma should be reduced as much as permissible. As an example, the Legislature has enacted NDCC § 12.1–20–14 limiting the scope of examination of a complaining witness in a sex-offense crime.

■ The recognition of these principles is necessary to ensure, as much as possible, that victims of sex crimes will disclose the offenses to authorities for appropriate action. In actions involving sex crimes, the complainant is not the person being tried. The proceedings should not put the complaining witness on trial to shift the attention away from the accused. Neither should the trial be conducted to unnecessarily subject the complaining witness to additional trauma. However, we must also recognize the right of one accused of a sex offense to have a fair trial. We believe these competing principles require that we follow what appears to be the majority rule that the trial court has discretion to order a psychiatric examination[2] of a complaining witness based upon compelling reasons established on the record, but not for a mere fishing expedition.

We now turn to the specific issue raised by Buckley of whether or not he was denied his constitutional right to confrontation when the trial court refused to allow any inquiry as to the victim's history of treatment for a mental condition.

■ The opportunity to cross-examine a witness is the primary mode to safeguard the Sixth Amendment right of confrontation; however, the scope of cross-examination is necessarily a matter involving the

---

**2.** This examination should not be confused with a medical examination immediately after the victim reports the incident to verify the physical condition of the victim.

trial court's discretion. *State v. Rindy*, 299 N.W.2d 783 (N.D.1980); *State v. Entze*, 272 N.W.2d 292 (N.D.1978). The scope of cross-examination is also limited by the subject matter of direct examination and matters affecting credibility of the witness. North Dakota Rules of Evidence 611(b). Cross-examination must also be relevant to be admissible. Rule 402, NDREv.

The test to determine whether evidence is relevant or irrelevant is whether the evidence would reasonably and actually tend to prove or disprove any matter of fact in issue. *Mehus v. Thompson*, 266 N.W.2d 920 (N.D.1978).

We have also said:

"... the determination of whether evidence is too remote to be relevant is left to the discretion of the trial judge, and his decision will not be reversed in the absence of clear proof of an abuse of that discretion." *State v. Moe*, 151 N.W.2d 310, 316 (N.D.1967).

*See also, Wall v. Zeeb*, 153 N.W.2d 779 (N.D.1967).

In this instance we do not believe the trial court abused its discretion in refusing to allow the line of questioning propounded by Buckley because, based on the record before us, the testimony was not relevant. The original motion to compel the complaining witness to undergo a psychiatric examination and the affidavit in support of that motion does not contain an adequate basis or foundation to compel a psychiatric examination. That motion could properly be characterized as a fishing expedition. The responses to the ten questions submitted by Buckley reflect that the complaining witness had undergone psychiatric treatment two years before the incident; however, the affidavit of Dr. Thakor, her treating psychiatrist, stated that her previous treatment would not affect her "ability to accurately recall and truthfully relate events while under oath." Nothing in the record leads us to a different conclusion. The affidavit supports the denial of the motion.

No offer of proof, supported by facts established in the record, was made to the effect that the victim's past treatment or present psychiatric condition (or lack of psychiatric condition) affected her ability to truthfully relate the incident. We do not believe the psychiatric treatment of the complaining witness two years before the incident, without more, establishes a sufficient basis to make questions concerning that treatment relevant.

Based on the absence of these factors, we conclude that the trial court did not abuse its discretion in limiting the cross-examination of the victim because the record does not establish that the questions were relevant.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.