**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Virgil ROTT, Defendant and Appellant.**

**Cr. No. 1108.**

Supreme Court of North Dakota.

Jan. 7, 1986.

Ronald G. Splitt, State's Atty., LaMoure, argued, for plaintiff and appellee; argued by Mr. Splitt.

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for defendant and appellant; argued by Thomas E. Merrick.

ERICKSTAD, Chief Justice.

The defendant, Virgil Rott, appeals from a LaMoure County Court judgment of conviction for physical obstruction of a governmental function in violation of Section 12.1–08–01, N.D.C.C. We affirm.

On November 15, 1984, the district court issued an order for claim and delivery of personal property of Virgil Rott and Shir-

ley Rott. The Rotts were directed to turn over the following items to the Sheriff of LaMoure County:

"1.  All livestock and appurtenant brand and/or registration papers;

2.  All farm equipment and implements including spare and repair parts and replacement equipment, except for irrigation equipment and alcohol plant equipment;

3.  All harvested crops and all feed;

4.  All PIK bushels or PIK checks;

5.  All motor vehicles, titles, and keys, except for the 1982 Buick Electra and all 1983 Chevrolet one-half ton Silverados.

"Virgil and Shirley Rott are hereby ordered to make the above described property available to the Sheriff and, in particular, they are ordered to surrender all brand and registration certificates to their cattle to the Sheriff or his agent."

Ray Laning, then Sheriff of LaMoure County, first went to the defendant's farm to attempt to execute this order on November 21, 1984. After Virgil Rott refused to turn over certain vehicle titles and brand papers, Sheriff Laning informed Virgil Rott that he would return to execute the order on November 23, 1984.

At 9:00 a.m., November 23, 1984, Sheriff Laning, Deputy Sheriff Edwards, and some helpers arrived at the Rott farm. Virgil Rott again refused to give Sheriff Laning certain vehicle titles and brand papers. Rott explained that he did not give up the vehicle titles because he did not believe the creditor had a secured interest in the vehicles and did not give the Sheriff brand papers because the cattle had not been inspected by the brand inspector.

While Deputy Edwards was attempting to load approximately 160 cattle, a group of about five or six people, which included Virgil Rott and several friends, gathered and blocked the route the cattle were to travel. When asked to move out of the path of the cattle, the group refused. After several delays, the cattle broke loose. This forced Deputy Edwards to use a dif-ferent route in the loading process. Deputy Edwards testified that the group moved back and forth, preventing the cattle from traveling the planned route. Members of the group testified that they were just standing in a semicircle talking and that somebody starting a truck nearby was what spooked the cattle.

The group then moved in front of a pickup truck that was to be used to load some machinery. When one of the helpers attempted to drive the pickup, the group refused to move. Sheriff Laning noticed this and asked Rott to move so that the pickup could get out. According to testimony of Sheriff Laning, Rott responded, "this is my farm, I'll stand where I damn please." After asking Rott a second and third time to move, Sheriff Laning grabbed Rott by both arms and moved him back out of the path of the pickup. Rott attempted to get loose of the Sheriff's grip but the Sheriff managed to hold him back. Sheriff Laning testified (and Rott acknowledged) that as the pickup drove by, Rott kicked the right rear tire and yelled, "look it there, they run over my foot, I'm gonna sue the bastards."

Sheriff Laning then began to move Rott over towards his car. At this time Rott made a motion with his hand towards the Sheriff's pistol (which was loaded and placed in a holster on the Sheriff's right hip). The Sheriff grabbed Rott's wrist and Rott only managed to slap the pistol. Sheriff Laning testified that Rott then said, "Lookit there, armed robbery in broad daylight." Rott acknowledged saying this and testified that he further stated, "Why don't you draw this thing and make it legal according to your books." Rott testified that he never tried to get at the gun but only to tap it and point out that he did not believe everything was being done legally.

The Sheriff testified that he ultimately managed to move Rott over to the car. He further testified that as he unlocked his car, Rott raised his arm up with a clenched fist as though he were going to strike him, but then stopped. Rott testified that he only moved his hands from the top of the

car in order to get into the car and that his hands were open at all times.

Aside from not receiving any brand papers and vehicle titles, Sheriff Laning eventually was able to carry out the order.

On November 26, 1984, a criminal complaint was filed against Virgil Rott charging him, "with an offense of 'physical obstruction of a governmental function' in violation of NDCC 12.1–08–01." [1] A jury found Rott guilty of this offense.

Rott raises two issues on appeal. One, whether or not the county court erred in not instructing the jury on specific intent as requested by the defendant. Two, whether or not the county court erred in not instructing the jury that obstruction under the statute requires substantial stoppage of the officer's progress.

I

The pertinent part of Section 12.1–08–01 reads as follows:

"1. A person is guilty of a class A misdemeanor if he intentionally obstructs, impairs, impedes, hinders, prevents, or perverts the administration of law or other governmental function."

Rott proposed that the county court use the following definition of the word "intentionally" when explaining this portion of Section 12.1–08–01 to the jury:

"Under the law a person engages in conduct 'intentionally' if, when he engages in the conduct, it is his purpose to do so.

"In order to find the Defendant guilty of the crime charged, you must find beyond a reasonable doubt that the Defendant had the specific intent to do an act that the law forbids, that is, to obstruct, impair, impede, hinder, prevent, or pervert the administration of law or other governmental function."

The county court rejected this proposal and gave the jury the following instruction:

"The term 'intentionally' simply means that the act was done on purpose and was not an inadvertence....

"The burden of proof resting upon the State is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:

(1) That on or about November 23, 1984, the defendant did intentionally obstruct, or impair, or impede, or hinder, prevent, or pervert the administration of law or other governmental function;...."

In his brief, Rott explains that there is a difference between intending to commit certain acts and intending those acts to accomplish a particular result. His argument seems to be that he could have intended to stand in front of the cattle and pickup truck (intending to do so—intending to commit certain acts) without intending to obstruct a governmental function (without purposely obstructing). We do not believe the court foreclosed that possibility by its instructions. Rott states that,

"The fatal flaw in the Court's instruction on intent is its disregard for the possibility of an unintended obstruction. From the Court's instruction it is very

---

1. Section 12.1–08–01, N.D.C.C., states as follows:
   *"Physical obstruction of government function.*
   1. A person is guilty of a class A misdemeanor if he intentionally obstructs, impairs, impedes, hinders, prevents, or perverts the administration of law or other governmental function.
   2. This section does not apply to the conduct of a person obstructing arrest of himself, but such conduct is subject to section 12.1–08–02. This section does apply to the conduct of a person obstructing arrest of another. Inapplicability under this subsection is a defense.

3. It is a defense to a prosecution under this section that the administration of law or other government function was not lawful, but it is no defense that the defendant mistakenly believed that the administration of law or other government function was not lawful. For the purposes of this subsection, the conduct of a public servant acting in good faith and under color of law in the execution of a warrant or other process for arrest or search and seizure shall be deemed lawful."

probable that a juror would conclude that if there was an act by the Defendant, and an obstruction occurred, that it must be inferred that it was the actor's intent to obstruct."

In determining whether or not a jury instruction is misleading, the instruction must be considered as a whole and, when considered as a whole, the instruction is sufficient if it correctly advises the jury as to the law, even if a part of the instruction standing alone may be insufficient or erroneous. *State v. Bonner*, 361 N.W.2d 605, 609 (N.D.1985); *State v. Halvorson*, 346 N.W.2d 704, 709 (N.D.1984). In our view the instructions which explained the intent element necessary for a violation of Section 12.1–08–01 did not incorrectly advise the jury as to the law.[2]

The jury instructions used by the court required the State to prove, beyond a reasonable doubt, that, "the defendant did intentionally obstruct ... the administration of law or other governmental function." In light of the evidence in this case of the defendant's persistent conduct, it is highly unlikely that the jury was misled by that instruction. Accordingly, we find no error in that instruction.

## II

Rott next argues that the court erred in not instructing the jury that there must be a "substantial stoppage" of the officer's progress in order for there to be a violation of the statute. We do not agree. The court should not be required to instruct the jury that there must be a substantial stoppage when substantial stoppage is not an element of the offense. See Section 12.1–08–01, N.D.C.C., footnote 1 *infra*. The statute does not require a sub-

stantial stoppage of the officer's progress for a violation to have been committed.

Rott requested that the following instruction be given to the jury:

"The words 'obstruct, impair, impede, hinder, prevent, or pervert', used in the law under which Virgil Rott is charged means substantially the same thing. The word 'impede', for instance, means to obstruct, to stop in progress: to hinder. In order to define the Defendant guilty of 'physical obstruction of a government function' *you must find that there was a substantial stoppage of the officer's progress.*" [Emphasis added.]

The court instead gave the following instruction:

"The statue [sic] alleged to have been violated is entitled 'Physical obstruction of government function'. The word 'physical' implies that the obstruction must have a material, substantive and objective existence, as contrasted to something merely in the mind of a person. However, the use of direct force or physical violence is not required to constitute the offense of physical obstruction of a governmental function as denounced by the statute. But it is necessary that some overt act directed toward an officer, in this case, the Sheriff of LaMoure County, whose action or failure to act would affect the outcome of the judicial process he was carrying out. Whether or not the acts of the defendant were successful in preventing the officer from the performance of his duty is not material. The purpose of the statute is to enforce orderly behavior in the important mission of carrying out the due process of the Court, and that any act that was intended by the defendant to thwart that purpose violates the statute.

**2.** Neither party has discussed on appeal the following definition of "intentionally" in Section 12.1–02–02, N.D.C.C.:

"1. For the purposes of this title, a person engages in conduct:
a. 'Intentionally' if, when he engages in the conduct, it is his purpose to do so."

In the lower court Rott argued that his definition of "intentionally" is "right out of the stat-

ute" and "more properly emphasizes that intent is in fact an element of the crime." While this part of Rott's proposed jury instructions may have been more similar to the wording of the statute than the jury instructions used by the court, it does not necessarily follow that the instructions used by the court, when considered as a whole, were misleading or incorrectly advised the jury as to the law.

"You are further instructed that the simple refusal to give an officer any assistance in executing the process is not violative of the statute. Merely remonstrating with the officer, or criticizing the officer, or arguing with him while he is in the performance of his duty, is not by itself violative of the statute. Nor is vilification of the officer. Also, threats alone are insufficient to constitute the offense, but threats accompanied by some overt act or a show of force short of actual violence are sufficient to constitute the offense of physical obstruction of a governmental function."

In our view, the instructions that were given were perhaps more favorable to the defendant than he was entitled to under the law, but that is something about which he cannot complain.

For the reasons stated in this opinion we affirm the judgment of the county court.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.