State of Nebraska, appellee, v. Richard D. Moore, appellant.

380 N.W.2d 288

Filed January 24, 1986.   No. 85-160.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Robert M. Spire, Attorney General, and Mel Kammerlohr, for appellee.

KRIVOSHA, C.J., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Defendant, Richard D. Moore, was charged by information filed in Douglas County District Court with one count each of theft by deception and attempted theft by deception. After jury trial Moore was convicted on both counts. Moore was then sentenced to 4 months in the Douglas County Corrections Center on each count, with the sentences running concurrently. In this appeal Moore assigns as error that the district court improperly admitted into evidence (1) "testimony concerning other acts of the Defendant" and (2) "testimony concerning the Defendant's family income." For the reasons hereinafter stated we reverse and remand for new trial.

The facts show that Moore filed loss claims with Royal Insurance Company and Fireman's Fund Insurance Company, setting out losses on September 21, 1981, and on January 9, 1982, respectively. In both instances the insurance companies had issued a standard homeowner's policy to Moore, and Moore had timely paid the premium. Evidence was adduced at trial concerning Moore's actions in filing these claims, and Moore was convicted of theft by deception on the September 21, 1981, claim and attempted theft by deception on the January 9, 1982, claim. There is no contention in this court that the evidence on these two counts was not sufficient to support Moore's conviction.

Both in the State's case in chief and during the State's cross-examination of defendant, the prosecution repeatedly, over defendant's counsel's objection, introduced testimony concerning a series of insurance claims filed by Moore from mid-1979 to late 1984. The claims referred to in the State's case in chief, in addition to those charged, were the following:

### (A)

Mark Schwartz, a claims representative for Royal Insurance, testified that Moore filed a claim for a loss occurring April 25, 1981, for $4,847 worth of stereo equipment. Schwartz testified that he had obtained a taped statement from Moore and that Moore had told him that Moore's stereo equipment, which he had loaned to his brother for a party, had been stolen from his brother's van in Merriam, Kansas. Royal paid Moore approximately $4,400 on the claim.

### (B)

Lonnie Howell, a claims adjuster for Fireman's Fund Insurance Company, testified that Moore filed a loss claim on October 30, 1981. This claim alleged a break-in of the defendant's mother's car in the Midlands Mall parking garage in Council Bluffs, Iowa, on October 12, 1981, which was 12 days after the insurance went into effect. Howell testified that the police report indicated that the vehicle was locked, had the windows rolled up, and had no appearance of forced entry. Moore claimed a total loss of approximately $3,500 for articles stolen from the car which were owned by him. Fireman's paid $3,150 on the claim.

On cross-examination of Moore, the State, over defendant's counsel's objection, went into detail as to the two claims put in evidence in the State's case in chief. Also on cross-examination, the State elicited evidence of the following claims:

### (A)

Moore testified that on July 10, 1979, he had a boat, motor, and trailer stolen from Carter Lake, Iowa. Moore further testified that he filed a claim with his insurance carrier, State Farm Mutual Insurance Company, which paid the claim in an amount not specified.

### (B)

Moore testified concerning a burglary of his home on November 3, 1979, and stated he sustained a loss of $6,000 in stereo equipment. State Farm Mutual Insurance Company paid the claim in an amount not specified.

### (C)

Moore testified that in June of 1982 he and his brother visited the Ocean Wave Bar in Council Bluffs, Iowa, and when they left the bar they discovered that Moore's car had been stolen. The

car was later found near Missouri Valley, Iowa, where it had apparently been stripped and set afire. Moore filed a claim with his insurance company, Western Casualty, which paid $12,000 on the claim.

(D)

Moore testified that he filed two loss claims in November of 1984. The claims were filed with two different insurance companies; one for loss of personal property in the car and the other for damage to the car. Moore submitted a claim of $2,500 for a video camera and recorder which were stolen out of his car while parked in the Blue Ridge Mall parking lot in Kansas City, Missouri, where Moore was visiting, and a claim of $600 for damages to his car at the time. Moore was paid in full for both of these claims.

Moore testified on his own behalf on direct examination. He testified as to facts in connection with the specific charge in the information concerning his claim submitted on the January 9, 1982, loss. He also denied generally that he intended to or did defraud either of the insurance companies at any time. There was no testimony on his direct examination concerning his income, living expenses, or any related matters. Moore's entire testimony on his direct examination covered seven pages of the bill of exceptions. The State's cross-examination of Moore covered 56 pages of the bill of exceptions. The second question asked on cross-examination was: "Mr. Moore, during the months or during the year 1981 and the month of January in 1982, I want to know what your monthly expenses were. And I will help you with that by going through some specific items."

In response to a long series of questions beginning with the foregoing question, the trial court admitted into evidence, over objection, Moore's testimony concerning his occupation, income, and expenses. The prosecutor's inquiry ranged into subjects concerning Moore's various jobs, his house, his rate of pay, his mortgage payment, his utility bills, his car payments, the number of children he had, his grocery bills, his insurance premiums for life and health insurance, his charge card purchases, his car ownership, how he financed his cars, and his expenses for maintenance of his vehicles.

The prosecutor also inquired of the defendant about the

defendant's wife's job, name of her current employer, current income, previous employers, past income, and whether she had obtained raises. This evidence was objected to as being beyond the scope of direct examination and also as irrelevant to the determination of whether fraud was committed in the instant case.

Moore contends in his first assignment of error that the district court erred in improperly admitting testimony of "other acts." Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 1984) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Section 27-404(2), of course, is merely a part of § 27-404, entitled "Character evidence; not admissible to prove conduct; exceptions; evidence of other crimes, wrongs, or acts." Underlying the admissibility of such evidence under § 27-404(2) is the requirement that such evidence is relevant. "The rule is one of relevance." *State v. Coca*, 216 Neb. 76, 80, 341 N.W.2d 606, 609 (1983).

Relevancy is defined in Neb. Rev. Stat. § 27-401 (Reissue 1979). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In considering the relevance of the evidence in question, we note that the gist of the two crimes with which Moore was charged, as set out in Neb. Rev. Stat. § 28-512 (Reissue 1979), was obtaining, or attempting to obtain, property of another by deception. Deception, in turn, is defined in subsection (1) of the same statute as intentionally creating a false impression, "including false impressions as to law, value, intention, or other state of mind . . . ."

There is no doubt in these cases that Moore obtained property (cash) of another in one case and attempted to obtain cash in the other. The only possible relevance of Moore's other acts in dealing with insurance companies would be that those

other acts created a "false impression," or were such as to deceive an insurance company, and to thus tend to show that Moore was deceiving someone in the criminally charged actions in this case. If Moore's actions were not to deceive in the other instances, then such other actions would only show that Moore's character was to file an insurance claim when he had a loss of his property. That item of character is, of course, irrelevant.

The State recognized this and, therefore, undertook to insinuate that each of Moore's prior acts was deceitful. That simply cannot be done in a criminal case charging other specific crimes. The State clearly is trying to give effect to that old adage, "Where there's smoke, there's fire." Such evidence produced by the State, or elicited from defendant, on cross-examination, has no place in the proving of a criminal act. The evidence as to the other acts of Moore both before and after the crimes charged was irrelevant and should not have been admitted.

In addition to our determination as to the relevance of the evidence as to Moore's insurance claims other than those which were the subject of the information, we note also that such evidence could readily lead the jury to reach a decision on an improper basis. Neb. Rev. Stat. § 27-403 (Reissue 1979) states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." On the question of "unfair prejudice," we said in *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 439, 345 N.W.2d 300, 306 (1984):

> Most, if not all, items which one party to an action offers in evidence are calculated to be prejudicial to the opposing party; therefore, it is only "unfair prejudice" with which we are concerned. In the context of § 27-403 such prejudice means a tendency to suggest a decision on an improper basis.

In this case the State has been able to submit the question as to the commission of two alleged crimes by adducing evidence as to six other incidents—none specifically alleged to be

criminal in nature—and thus inviting the jury to determine criminality by sheer weight of numbers.

In its brief the State contends, "Because of the frequency by which these claims occurred, the court did not abuse its discretion in determining that such claims were relevant and probative on the issue of intent, plan or scheme." Brief for Appellee at 9. However, in referring to § 27-404(2), this court held in *State v. Ellis*, 208 Neb. 379, 392, 303 N.W.2d 741, 750 (1981), "The trial court must balance between the danger of unfair prejudice to the defendant and the probative value of that evidence." We also went on to say, "It is for this court to determine whether the trial court abused its discretion, taking into consideration all factors and other means of proof." *Id*. The evidence of the other claims unfairly prejudiced the defendant in the jury's consideration of the charges against him.

In his second assignment of error, Moore contends that the trial court improperly allowed the prosecutor to inquire into Moore's family finances. Specifically, Moore argues that the inquiry was "irrelevant, highly prejudicial and beyond the scope of the direct exam." Brief for Appellant at 14. The State contends this line of questioning was relevant because of Moore's "unfavorable financial situation." Brief for Appellee at 13. The State contends that the poor financial position of the defendant establishes a motive for defrauding insurance companies. Such reasoning and the resulting evidence would help the State's position in every case where the defendant is poor, and could be injected into every case where it might aid a defendant. Finally, the State contends that even if the financial position of Moore was irrelevant, "the admission of such evidence would nevertheless constitute harmless error." Brief for Appellee at 14. None of the State's contentions have merit.

It is well established that the scope of cross-examination of a witness rests largely in the discretion of the trial court, and its ruling will be upheld on appeal unless there is an abuse of discretion. *State v. Thaden*, 210 Neb. 622, 316 N.W.2d 317 (1982). In this case, however, the State's inquiries led only to totally irrelevant evidence, and the admission of such evidence constituted an abuse of the trial court's discretion. The

questions began as to the date that Moore purchased his home in Omaha in January of 1979 and progressed through the amount of his monthly payments, the number of his children, and the amount of his monthly grocery bill in 1981. At one point Moore was asked if he had not bought a 1973 Grand Prix automobile in November of 1979, and when Moore stated he could not remember, an obviously impeachment-directed question was next asked: "But you do remember going to a bar called The Garage in Millard the night of January 9th, but you can't remember what automobiles you had in 1981?" Similar insinuations were made as to Moore's testimony as to relevant events. Evidence resulting from such inquiries is irrelevant and prejudicial in this case. The impeachment of a witness may not be based on such tangential matters.

Given the circumstance of this case, we believe the trial court did abuse its discretion in allowing the prosecutor to inquire into Moore's financial position and that such evidence was not merely "harmless error" but was prejudicial to Moore.

We reverse the judgment and remand the cause to the district court for a new trial consistent with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., participating on briefs.

KRIVOSHA, C.J., concurring in the result.

I concur in the result reached by the majority in this case. I write separately, however, because I believe that any reference to Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 1984) is misplaced. The evidence in this case with regard to other claims made by the appellant and paid by various companies was inadmissible because the evidence was irrelevant under the provisions of Neb. Rev. Stat. § 27-401 (Reissue 1979). There was no issue as to whether the evidence could have been offered to show motive under § 27-404(2). It could not.

CAPORALE and SHANAHAN, JJ., join in this concurrence.