**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kendal HUWE, Defendant and Appellant.**

**Cr. No. 1223.**

Supreme Court of North Dakota.

Sept. 29, 1987.

Peter H. Furuseth, State's Atty., Williston, for plaintiff and appellee.

Eaton, Van de Streek & Ward, Minot, for defendant and appellant; argued by Michael Ward.

GIERKE, Justice.

Kendal W. Huwe appeals from a criminal judgment entered on a jury verdict finding

him guilty of theft of property by deception, a class C felony, in violation of §§ 12.1–23–02(2), 12.1–23–05(2)(a) and 12.1–23–10(2)(f), N.D.C.C. We affirm.

The criminal information in this case alleged that Huwe "did knowingly obtain the property of another, namely the Williston Cooperative Credit Union, by deceptively obtaining and using a VISA credit card, in excess of $500.00." The evidence at trial reflects that Huwe and his wife received authorization for use of a VISA credit card from the Credit Union on March 6, 1985. Although Huwe claimed he did not sign the application for the credit card, he admitted receiving the card and using it. The credit card was approved with a $1,000 credit limit. Between March 27 and May 4, 1985, Huwe and his wife made approximately 230 separate purchases with the card in the Williston and Minot areas charging more than $7,000. Only three of those transactions involved purchases of more than $50. The State introduced in evidence 74 charge slips signed by Huwe during that time which totaled approximately $2,400. At the time the charges were made, Huwe was more than $200,000 in debt. Huwe was self-employed as a long-haul trucker and had an income of $26,000 in 1984. His total income from trucking and other employment for 1985 was $12,000. On June 6, 1985, Huwe returned the card to the Credit Union at its request and made a $40 payment on the bill. In December 1985 Huwe filed for bankruptcy. The jury returned a verdict of guilty and Huwe received an 18 month suspended sentence and was ordered to pay a $5,000 fine.

Huwe asserts that the trial court erred in allowing the introduction in evidence of the VISA credit card application, which he claims he did not sign, and the complete listing of credit charges which included charges made by his wife.[1] He asserts that this evidence was irrelevant and unfairly prejudicial, because it allowed the jury to consider his wife's credit charges as evidence against him.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, N.D.R.Evid. Relevant evidence, however, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Rule 403, N.D.R.Evid. Whether evidence is too remote to be relevant and whether the probative value of such evidence is outweighed by the risk of unfair prejudice are questions for the trial court to resolve in the exercise of its sound discretion. *State v. Kringstad*, 353 N.W.2d 302, 309 (N.D.1984); *State v. Moe*, 151 N.W.2d 310, 316 (N.D.1967).

In allowing introduction of the VISA application, the trial court reasoned that "[t]he fact that Mr. Huwe did not sign this instrument, the fact that he says he never received a copy of it, and has never seen it, all of that can be brought out on examination and will certainly permit the jury to give this instrument significant[ly] less weight and value that it would have otherwise. But nonetheless, it does have some probative value given all of the circumstances surrounding it and his subsequent use of the credit cards." With regard to evidence of the credit charges made by Huwe's wife, the trial court stated that "[w]e will let the jury hear these facts and let the jury give [them] what weight and value they wish."

■ The credit card application was certainly relevant. It showed not only that Huwe had been authorized a card, but also that there was a $1,000 credit limit on the account. Huwe's claims that he never signed the application or knew of its contents were properly for the jury to consider. The lists documenting the charges made by both Huwe and his wife were also relevant because they had a tendency of showing that Huwe must have been aware that the credit limit had been exceeded. Huwe and his wife were living together at

---

**1.** Huwe and his wife were divorced in January 1986. She was also charged in the case and pleaded guilty. She did not testify at Huwe's trial.

the time the charges were made. The State did not unduly emphasize the credit charges made by Huwe's wife and introduced in evidence only the 74 charge slips signed by Huwe. The jury, through testimony and argument, was made aware that most of the charges comprising the $7,000 bill were not attributable to Huwe. We do not believe that the trial court abused its discretion in allowing this evidence.

Huwe asserts that if the evidence was properly admitted, the trial court committed reversible error in refusing to give his requested jury instructions to the effect that a husband is not responsible for his wife's actions.[2] The trial court refused to give the instructions "because they tend to have the Court comment on the evidence, and it is more appropriate as argument to the jury by counsel than as an essential action or instruction on the law by the Court." The trial court also reasoned that the existing instructions "define in understandable language the legal principles that are involved" in the case.

It is well-settled that if the instructions to the jury, when considered in their entirety, correctly advise the jury as to the applicable law, there is no error even though the trial court refused to submit a requested instruction which itself was a correct statement of the law. *State v. Ferguson*, 391 N.W.2d 172, 176 (N.D.1986); *see also State v. Marcovitz*, 63 N.D. 458, 248 N.W. 481, 487 (1933) ["A requested charge need not be given if it is fully covered in the general charge."]

■ We believe the instructions given in this case adequately apprised the jury that Huwe could only be convicted for his own acts, and not those of his wife. The jury was instructed that the State had the burden of proving beyond a reasonable doubt that "Kendal Huwe obtained property of Williston Cooperative Credit Union;" that "he obtained the property by Deception;" and that "he engaged in this conduct Knowingly and with Intent to deprive the Credit Union of the property." Huwe's counsel was allowed to argue to the jury that he had no knowledge of and was not responsible for his wife's charges. We find no reversible error in the trial court's refusal to give Huwe's requested instructions.

■ Huwe asserts that the trial court erred in allowing the jury to hear evidence that Huwe filed for bankruptcy in December 1985. Huwe claims that this evidence was also irrelevant and unfairly prejudicial, because there "was no testimony indicating" that Huwe was contemplating bankruptcy at the time the credit charges were made. The trial court determined that the bankruptcy filing was another matter for the jury to consider in regard to Huwe's intent, and further noted that the evidence could be of some benefit to Huwe.

Huwe's filing for bankruptcy within a relatively short time after the credit charges were made has some probative value as to whether he had the intention or ability to pay off the debt at the time the charges were made. This court has recognized that, even with regard to evidence of other acts or offenses otherwise inadmissible, such evidence may be admissible when "(1) the evidence provides a more complete story of the crime by putting it in context of happenings near in time and place; (2) it proves the existence of a continuing plan or scheme of which the crime on trial is a part, thus tending to show intent; (3) it shows that the act on trial was not inadvertent, accidental, unintentional, or without guilty knowledge." *State v. Frye*, 245 N.W.2d 878, 883 (N.D.1976). *See also State v. Biby*, 366 N.W.2d 460, 463 (N.D. 1985). We conclude that the trial court did not abuse its discretion in allowing the jury to consider this evidence.

---

2. Huwe's requested instructions on "Spouses Acts" state:

"Acts done by the spouse are not evidence against the other spouse. Neither Spouse is responsible for the behavior or charges of the other spouse.

"The husband is not criminally responsible for the behavior of the wife and her acts to the extent he was unaware of them should not be considered as evidence against him."

Huwe argues in the alternative that the trial court erred in refusing to give the following instruction on "Bankruptcy:"

"The fact that a person declared Bankruptcy should not be held against him. If a person become [sic] bankrupt he has the right to declare bankruptcy without any prejudice attaching to the act."

We agree with the trial court that, like the requested instructions on "Spouses Acts," the gist of this instruction was better left for argument to the jury.

Huwe also asserts that the State failed to establish a prima facie case of felony theft of property under Chapter 12.1–23, N.D.C.C. When, as in this case, a defendant presents evidence after a motion for judgment of acquittal is denied at the close of the prosecution's case-in-chief, we may review the entire record to determine whether sufficient evidence exists to sustain the verdict. *State v. Allen*, 237 N.W.2d 154, 159 (N.D.1975); *see also State v. Engebretson*, 326 N.W.2d 212, 214 (N.D. 1982).

Huwe first claims that because he was charged with a class C felony theft under § 12.1–23–05(2)(a), N.D.C.C., which requires that the value of the property stolen exceeds $500, and because none of the separate credit charges exceeded $500, the State failed to establish its case. We disagree.

Section 12.1–23–05(6), N.D.C.C., provides in pertinent part:

"Thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be charged as one offense and the amounts proved to have been stolen may be aggregated in determining the grade of the offense."

The drafters' comments to the proposed Federal Criminal Code provision upon which our law is based state:

"[A]ttention should be drawn to the last sentence of the proposal. The provision there is that amounts involved in related thefts may be added together to get valuation. The thefts must of course be proved as part of the conviction in order to be so used. The idea is that instead of

pyramiding misdemeanor sentences, for example, because of a series of related but different thefts of small amounts, the court should be entitled to impose one felony sentence considering the related transactions as a whole. The court is not being permitted to aggregate unproven offenses; what is being permitted is for the court to consolidate six misdemeanor charges, for example, into one felony sentence." II Working Papers of the National Commission on Reform of Federal Criminal Laws, at pp. 954–955 (1970).

■ The State presented evidence of 74 charge slips signed by Huwe during a two-month period which totaled approximately $2,400, well over the $500 required for felony theft. Huwe's argument is without merit.

Huwe also challenges the sufficiency of the evidence to establish two of the requisite elements of the offense. "Deception" is defined in § 12.1–23–10(2)(f), N.D.C.C., as including:

"f. Using a credit card, charge plate, or any other instrument which purports to evidence an undertaking to pay for property or services delivered or rendered to or upon the order of a designated person or bearer (1) where such instrument has been stolen, forged, revoked, or canceled, or where for any other reason its use by the actor is unauthorized, and (2) where the actor does not have the intention and ability to meet all obligations to the issuer arising out of his use of the instrument;"

Huwe claims that: 1) there was no evidence that his use of the credit card was "unauthorized" because all the charges were made before the card was revoked; and 2) there was no direct evidence that he did not have the intention and ability to meet the obligation arising out of the use of the instrument.

■ Initially, we note the State's theory was not that Huwe improperly used the credit card after it was revoked, but that

he knowingly used it far beyond the authorized credit limit without any intention or ability to pay the debt. We have recognized that intent and knowledge "may often be shown only by circumstantial evidence." *Amerada Hess Corp. v. Furlong Oil & Minerals*, 348 N.W.2d 913, 919 (N.D. 1984). *See also State v. Heart*, 334 N.W.2d 479, 481 (N.D.1983); *State v. Vars*, 154 Conn. 255, 224 A.2d 744, 748 (1966). The State presented evidence that Huwe made an abnormally large number of purchases with the card during a short period of time. For the most part, these purchases were for less than $50 and were made at retail businesses. Many of these purchases were in fact made at the same businesses on the same day. The vice-president of the Credit Union testified that most retail merchants have a "floor limit" of $50, meaning that if a customer seeks to charge more than $50 in a transaction, the merchant is required to "phone in and get an authorization" through the "national VISA network" that the customer's credit limit will not be exceeded. The record also contains evidence that Huwe was more than $200,000 in debt during this period of time, that his income was minimal in relation to his debts, and that he filed for bankruptcy shortly thereafter. We believe there was substantial evidence in the record for the jury to convict Huwe of the crime charged.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.