**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Maximillion A. HEART, a/k/a Dayo H. Nagel, Defendant and Appellant.**

**Cr. No. 879.**

Supreme Court of North Dakota.

May 26, 1983.

Arne F. Boyum, State's Atty., Rolla, for plaintiff and appellee.

Kent L. Johnson, Teevens, Johnson, Montgomery, Minot, and Thomas Schoppert, New Town, for defendant and appellant; argued by Thomas Schoppert, New Town; Kent L. Johnson, Minot, on brief.

PEDERSON, Justice.

Heart was tried and convicted of committing the class B felony—possession of marijuana with intent to deliver (§ 19–03.1–23(1), NDCC). He was tried before a jury jointly with Scott R. Rougemont and was sentenced to serve four years in the North Dakota penitentiary (§ 12.1–32–01(3), NDCC). The last two and one-half years of the sentence were suspended. Heart appealed and we affirm the judgment of conviction and the sentence.

At 7:30 in the evening of August 12, 1980, Constable Edward Gordon Knight of the Royal Canadian Mounted Police telephoned Rolette County Sheriff Bryant Mueller to inform him that later that evening an illicit drug transaction would occur at Kelvin's Klinic, a rural Rolette County bar located a few miles south of the United States-Canadian border on U.S. Highway 281—N.D. Highway 3. Knight reported that the participants would be Scott R. Rougemont, an American, and Lawrence Dick, a Canadian. Knight, whose source of information has not been questioned, furnished a description of Rougemont and of Dick and of the vehicles each would be driving.

"Stakeouts" were accordingly placed inside and outside Kelvin's Klinic, along the route where N.D. Highway 43 intersects U.S. Highway 281 (N.D. Highway 3), and at the Canadian Port of Entry. Because one of the issues raised on this appeal is insufficiency of the evidence, we will describe the events that occurred that night from the evidence viewed in the light most favorable to the verdict. See *State v. Sheldon,* 301 N.W.2d 604 (N.D.1980), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204 (1981). The conviction is dependent upon circumstantial evidence.

A deputy sheriff, Rod Trottier, accompanied by a police officer from the City of Rolette, was stationed in Kelvin's Klinic and, at about 10:30 p.m., two men arrived, one of whom they readily identified as Scott Rougemont. The other person was later determined to be Maximillion Alexander Heart, also known as Dayo Harry Nagel, Jr. Outside the bar was parked a 1977 model Oldsmobile Toronado that matched the description previously furnished by Constable Knight. Deputy Trottier looked through the windows of the Toronado and saw a large cardboard box in the back seat. The sighting of the box was reported by radio to Sheriff Mueller, who was observing the Toronado with binoculars from across the highway, to another deputy sheriff, Lyle Prouty, and to two members of the United States Border Patrol, stationed at the intersection of U.S. Highway 281 (N.D. Highway 3) and N.D. Highway 43.

Lawrence Dick, the Canadian whom Constable Knight reported as a participant in the drug transaction and who lives in Bois-

sevain, Manitoba, a few miles north of the United States-Canadian border, did not show up at Kelvin's Klinic that night. When the bar closed at about midnight, Rougemont and Heart got into the Toronado and drove north toward the United States-Canadian border, followed at a distance by both Sheriff Mueller and Deputy Trottier. When the Toronado passed N.D. Highway 43, it was thereafter followed very closely by United States Border Patrolman Carl Greene and Tony Davis in an unmarked car.

When the Toronado reached the south edge of the International Peace Gardens (about one-half mile south of the United States-Canadian border), it turned off the highway onto an unpaved road, headed west for a short distance, and stopped at a low spot where, for a short time, it was out of sight of all pursuers. The two United States border patrolmen followed, moving very slowly past the Toronado parked on the narrow roadway. In their headlights they saw Heart returning to the Toronado from the ditch on the north side of the road.

The Toronado turned around and returned to U.S. Highway 281 (N.D. Highway 3) and headed for the United States-Canadian border. The two United States border patrolmen also turned around and, within minutes, all pursuers arrived at the Canadian Customs Port of Entry where the Toronado was being meticulously searched. When Sheriff Mueller arrived, he inquired about the box in the back seat and upon learning that there was no box but only a big German Shepherd dog, he asked the two United States border patrolmen to show him the spot where the Toronado had stopped on the road along the edge of the Peace Gardens.

The sheriff and the border patrolmen returned to the location, which was a low spot along the south edge of the Peace Gardens, and found a large cardboard box containing 20 clear plastic bags, each containing about one-half pound of marijuana. The box was located in the north ditch of the road about 10 paces from the roadway. Sheriff Mueller took custody of the box and the con-

tents, and returned to the Port of Entry where the search was still underway. Rougemont and Heart were arrested, charged, and ultimately both were convicted of possession of marijuana with intent to deliver.

Although there are some minor inconsistencies in the testimony of the State's witnesses, who were sequestered, and although Heart testified that there was no box in the Toronado and that the stop in the low spot on the unimproved road off the highway was to permit his dog to relieve himself, the allegation that the evidence is insufficient is without merit.

"At the trial court level, circumstantial evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but on the appellate court level the role of the Supreme Court is to merely review the record to determine if there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *State v. Olson,* 290 N.W.2d 664, 671 (N.D.1980).

Because the weight of evidence and credibility of witnesses are questions for the jury, *State v. Williams,* 150 N.W.2d 844, 849 (N.D.1967), we must assume that the jury believed witness Trottier when he said he saw a large, brown cardboard box in the back seat of the Toronado, and that the box found in the ditch at the spot where the Toronado stopped, which was introduced as State's Exhibit 2, was the same box and that it contained nearly 10 pounds of marijuana. For discussion of sufficiency of evidence of possession, actual or constructive, joint or exclusive, by occupants of an automobile, see *State v. Larson,* 274 N.W.2d 884, 886 (N.D.1979) (special concurrence by Supreme Court Commissioner Burdick, joined by Justices Sand and Vande Walle).

In arguing to this court that Heart's Sixth and Fourteenth Amendment rights to effective assistance of counsel were denied because of the incompetency of trial counsel, it is now arbitrarily stated, and for the first time:

a. Heart was unlawfully arrested.

b. Heart should not have been tried jointly with Rougemont.

c. Testimony from a rebuttal witness who was not sequestered should have been objected to.

d. Trial counsel should have made a timely motion for a new trial.

■ There should be no "chill" of the right to a challenge to the competency of counsel; however, counsel should avoid frivolous and unsupported charges of incompetency. In the absence of anything that would overcome it, counsel is presumed to be competent. *State v. Mehralian,* 301 N.W.2d 409, 415 (N.D.1981).

■ An arrest without a warrant is lawful if predicated on reasonable cause to believe that the person arrested has committed a felony. See § 29–06–15(3), NDCC and *Hardy v. Cunningham,* 167 N.W.2d 508 (N.D.1969). This issue was not preserved below and will not be considered on appeal.

■ Whether defendants should be joined for trial is, in the first instance, addressed to the sound discretion of the trial court. Rules 13 and 14, NDRCrimP. There is no showing that Heart was prejudiced in any way by the joinder. See *State v. Boushee,* 284 N.W.2d 423 (N.D.1979). The trial court was not asked to grant separate trials, thus no error occurred when Heart and Rougemont were jointly tried.

■ Under Rule 615, NDREv, it is mandatory to order the exclusion of witnesses when requested by a party. Rule 615 is taken from Rule 615, Federal Rules of Evidence, which has been interpreted as permitting government representatives to testify, at the trial court's discretion, in the government's case-in-chief even though they have remained in the courtroom after an order excluding all witnesses. See *e.g., United States v. Williams,* 604 F.2d 1102, 1115 (8th Cir.1979). Heart was not prejudiced by the rebuttal testimony of Deputy Sheriff Alan Strong who had not participated in any way in the events of August 12 and 13, 1980, but testified concerning his general acquaintance with the geographical features of the area involved. Even though Strong had heard the testimony of Heart and of all the State's witnesses, his testimony contradicted the State's evidence as well as that of Heart insofar as certain distances were concerned. The purpose of sequestration or exclusion of witnesses was not frustrated in this instance. There was no timely objection to Strong's testimony and no error has been shown.

■ A motion for new trial pursuant to Rule 33, NDRCrimP is not a prerequisite to an appeal in a criminal case pursuant to Rule 4(b), NDRAppP, and only when the motion for new trial is based upon the ground of newly discovered evidence will the time for appeal from a judgment of conviction be extended by the motion. Heart has not been deprived by the delayed motion for new trial of the right to challenge the rulings on every objection that he preserved by a challenge below.

This court said in *Waletzko v. Herdegen,* 226 N.W.2d 648, 653 (N.D.1975):

"It is not our function to seek out error, which the trial court was not given an opportunity to rectify, or to remake the record for review, or to allow second guesses on trial strategy."

We point out, however, that the antithesis of our declining to review issues that were not raised in the trial court is not to imply that counsel is incompetent when he fails to preserve, in the trial court, every possible issue that a different lawyer might wish to argue on appeal.

The judgment of conviction and the sentence are affirmed.

ERICKSTAD, C.J., and VANDE WALLE, SAND and PAULSON, JJ., concur.