**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Brian D. VOELLER, Defendant and Appellant.**

**Cr. No. 977.**

Supreme Court of North Dakota.

Oct. 23, 1984.

Linda L. Hickman, State's Atty., Williston, for plaintiff and appellee; argued by Linda L. Hickman.

Harms, Leier & Evenson, Williston, for defendant and appellant; argued by Patrick F. Leier, Williston.

ERICKSTAD, Chief Justice.

A jury found the defendant, Brian D. Voeller, guilty of having delivered a con-

trolled substance in violation of Sections 19–03.1–23(1)(b) and 19–03.1–05(4)(*o*), N.D. C.C. Voeller appeals from the jury's verdict of guilty and the district court's order denying his motion for a new trial. We affirm.

Voeller raises the following issues on appeal: (1) "Was the evidence presented at trial sufficient to sustain the jury's verdict?" (2) "Did the trial court err in denying the defendant's request of the court to poll the jurors individually because of negative publicity concerning defendant during trial" and, on these grounds, did the court also "err in denying defendant's motion for a new trial?" (3) "Did the trial court err in refusing to grant defendant's requested instruction on equivocation?"

### Sufficiency of Evidence

■ The standard of review which we employ in cases challenging the sufficiency of evidence to sustain a conviction is well-settled. We do not weigh or resolve conflicts in the evidence, nor do we judge the credibility of witnesses; those matters are for the trier of fact. We look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to determine if there is substantial evidence to warrant a conviction. *E.g., State v. Hatch,* 346 N.W.2d 268, 277 (N.D.1984).

The statutes under which Voeller was charged, Sections 19–03.1–23(1)(b) and 19–03.1–05(4)(*o*), N.D.C.C., render it unlawful for any person to deliver marijuana. " 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance...." § 19–03.1–01(6), N.D.C.C. The criminal information alleged that Voeller did willfully deliver a controlled substance, one-half ounce of marijuana, to Lane Holloway.

The evidence, viewed in the light most favorable to the verdict, reveals that on the evening of June 14, 1983, Gary Wiley, a special agent of the North Dakota Drug Enforcement Unit, was introduced to Lane Holloway as "Mike" by a confidential informant working with the Williston Police Department. Wiley told Holloway that he was interested in purchasing approximately one-half ounce of marijuana. Holloway, unaware that Wiley was a drug enforcement agent, said that he could get some marijuana for Wiley from someone else at a cost of forty dollars per quarter ounce.

Wiley followed directions given to him by Holloway in driving to an apartment building located on Washington Avenue in Williston. Wiley gave Holloway eighty dollars to use for the purchase of marijuana. Holloway testified that he knocked on the door to Voeller's apartment located on the second floor of the building, but no one answered. He returned to Wiley's car and directed Wiley to a Williston bar to meet Voeller, or "Red", as he was known. Holloway entered the bar alone where he located and conversed with Voeller. Voeller told Holloway that he could obtain one-half ounce of marijuana. Holloway and Voeller left the bar and proceeded to Wiley's car where Wiley and the confidential informant had been waiting. Holloway introduced Voeller as "Red" to Wiley.

Voeller directed Wiley to the apartment building on Washington Avenue. Holloway testified that Voeller left the car and entered the building from a side stairway and door which Voeller himself testified led to his apartment. Voeller returned shortly thereafter and laid a transparent plastic bag, containing what appeared to Wiley to be marijuana, between himself and Wiley in the front seat of the car. Holloway was seated in the back seat of the car with the confidential informant. Holloway and Wiley both testified that, while enroute to the bar, *Voeller handed the plastic bag and its contents to Holloway* and Holloway gave money to Voeller. Upon arriving at the bar, Voeller exited from the car and Holloway gave the plastic bag and its contents to Wiley.

Wiley testified that he delivered the plastic bag and its contents to Aaron Rash, a chemist with the State Laboratories Department. Rash testified that an analysis performed on the contents of the plastic bag revealed that it was marijuana.

Upon appeal to this Court, it is the defendant's burden to show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. *State v. Lawenstein*, 346 N.W.2d 292, 293 (N.D.1984). We are referred by Voeller to what he alleges are inconsistencies in the testimony of the State's witnesses which reveal that it was "impossible" for him to have been involved in the June 14, 1983, transaction and support his assertion made at trial that the State's witnesses fabricated their testimony.

Under our standard of review in cases challenging the sufficiency of the evidence, we must assume the jury believed the evidence which supports the verdict and disbelieved any contrary or conflicting evidence. *State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982) [citing *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980)]. Therefore, even inconsistencies in the State's case will not *require* that we reverse the jury's verdict. *State v. Pieschke, supra; see State v. Heart*, 334 N.W.2d 479, 481 (N.D.1983). The jury could very reasonably have disregarded as inconsequential what we believe were only minor inconsistencies in the testimony of the State's witnesses concerning events which occurred prior to the actual transfer by Voeller of marijuana to Holloway.

Having reviewed the evidence presented to the jury in the light most favorable to the verdict, we conclude that there was competent and substantial evidence reasonably tending to prove Voeller's guilt and warranting his conviction.

### Publicity During Trial

Voeller contends that he was denied a fair trial because the trial court did not poll each juror individually, out of the presence of the other jurors, to determine whether they had read or heard certain newspaper and radio news accounts about him and, if so, to determine what impact the news accounts had on each juror's ability to be fair and impartial. He argues that, because this was not done, the "mere possibility of prejudice" to the jury raised by the news accounts is sufficient grounds for the granting of a new trial. On this basis, Voeller also contends that the trial court erred in denying his motion for a new trial.

The constitutional standard of fairness requires that a defendant have a panel of impartial and indifferent jurors. *Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975); *State v. Olson*, 274 N.W.2d 190, 193 (N.D. 1978). It is the duty of this Court to make an independent evaluation of the circumstances relating to the fairness and impartiality of jurors subject to news articles concerning the trial [*Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966)]; however, we have acknowledged that ordinarily the matter must largely be left to the discretion of the trial court. *State v. Olson, supra.*

The jury selected and sworn to try this case was permitted to separate during the two-day trial; however, the trial court clearly admonished the jurors that they were not to read, listen to, or view news accounts of the trial; nor were they to discuss the case among themselves or with anyone else, to allow anyone to discuss the case within their hearing, or form or express any opinion about the case until such time as they retired to deliberate their verdict.

Prior to the evening recess on the first day of trial, November 30, 1983, the trial court told the jurors to "remember the Court's admonition." On the following morning, December 1, 1983, Voeller's counsel brought to the attention of the court a newspaper article published November 30, 1983, on page two of the *Williston Daily Herald*. The headline read: "Counterfeiter says he used Cheney schools' presses"— "Williston men involved." The article's source was a federal agent who described Brian D. "Voller" of Williston as the partner of an individual who had pled guilty in United States District Court to a charge related to a counterfeiting scheme. The article indicated that "Voller" had been ar-

rested in Wyoming; that "Voller has yet to go to trial in Wyoming, but has indicated he will plead guilty" to circulating counterfeit bills. The article made no reference to Voeller's ongoing trial in Williams County District Court, with which we are concerned in this case. Similar news accounts were broadcast by a local radio station but those accounts did not reveal that "Voller" had indicated he would plead guilty.

In *Olson, supra,* 274 N.W.2d at 191–94, newspaper articles were published on the eighth day of trial which raised "a very serious situation." The articles attributed some very critical testimony that had been presented at the defendant's preliminary hearing as having been received at trial when in fact, at that point in the trial, it had not. Upon the defendant's motion for a mistrial, the trial court examined the jurors and discovered that four of them had read the articles. The court then questioned the four jurors who indicated that the articles they had read had not influenced their capacity to determine, as fair and impartial jurors, the guilt or innocence of the defendant solely upon the evidence produced in court. In upholding the trial court's determination in *Olson* that a mistrial was not necessary to assure a fair trial, we found very significant the fact that the preliminary hearing testimony contained in the news articles was subsequently introduced at trial by the testimony of witnesses.

The trial court in *Olson* polled the jury to determine if they had been exposed to news articles concerning the trial. In this case Voeller's counsel made it known to the trial court his concern with the possible prejudicial effect the newspaper and radio accounts might have upon the jurors and requested that the court "talk to the individual jury members individually out of the hearing of others." No motion for a mistrial was made; counsel only requested that the court adhere to the following procedure:

"Ask each one [juror] individually—not specifically about that, but asking them about ... the admonishment [given] last night about not reading newspaper accounts, not listening or talking about the case, and attempt to bring to light in that way whether this immediate publicity of Brian Voeller in a different light has come to their attention.

"And if it has come to their attention, go into it as to the impact it may have."

The State's view at trial was that the news accounts, if read or heard, would not prejudice the jury because they had already learned on voir dire that Voeller had previously been convicted on an unrelated criminal charge. Voeller did, in fact, later testify that he had previously been convicted of felony theft of property. The trial court told Voeller's counsel that it had no reason to suspect that the jury would fail in their promise made on voir dire to come to a verdict based only upon the evidence presented in court. The jurors were not polled individually, out of the presence of the other jurors, and no determination was made by the court whether or not any jurors had read or heard the news accounts.

Voeller relies primarily on *Lindsey v. State,* 260 Ind. 351, 295 N.E.2d 819 (1973), wherein the Indiana Supreme Court reversed a defendant's burglary conviction because the trial court failed to take remedial action during trial concerning a newspaper article that had appeared the evening before in a local newspaper. The newspaper article alleged that a rape had occurred during the burglary of which the defendant was accused and that the defendant was an escapee from a mental institution to which he had been committed for attacking a woman, both facts of which were not in evidence at trial. The article also reported that a witness had identified the defendant from police photographs, while in fact she had been unable to do so. The defendant in *Lindsey* filed a motion for a mistrial. The trial court acknowledged the impropriety and inherent risk from the article and that the defendant was entitled to a mistrial, if it had any effect upon the jury. Nevertheless, the court denied the motion for a mistrial and did not conduct an examination of the jury, upon the subject of the

article, until after the jury had reached its verdict of guilty. The examination revealed that eight of the twelve jurors had been exposed to the article.

The facts of *Lindsey* illustrate that when publicity takes place during trial, the defendant cannot show *actual* exposure or prejudicial effect unless the court allows the jury to be polled in some manner. Circumstances vary widely, however, and it cannot be said that every news story published concerning the defendant or an aspect of trial is prejudicial or even potentially prejudicial to the defendant. *State v. Clark*, 675 P.2d 557, 560 (Utah 1983). In *Lindsey* the court set forth a procedure for resolving the problem of potential prejudice to the accused by publicity appearing during trial:

> "Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. *If the risk of prejudice appears substantial, as opposed to imaginary or remote only*, the court should interrogate the jury *collectively* to determine who, if any, has been exposed.... If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof." 295 N.E.2d at 824. [Emphasis added.]

What we believe to be a significant fact in *Lindsey* is that the court reversed the judgment of the trial court "because *in view of the highly prejudicial nature of the publication,* the defendant was entitled, as a matter of right, to have the jury polled to determine which jurors, if any, had been exposed to it." *Id.* [Emphasis added.] Similar procedures for inquiring into possible jury exposure to publicity during trial have been adopted by other courts. These procedures, like those in *Lindsey*, do not require that the trial court poll the jury in every instance in which a claim of preju-

dicial news accounts is made. *"Unless there is substantial reason to fear prejudice,* the trial judge may decline to question the jurors." *United States v. Jones*, 542 F.2d 186, 194 (4th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976). *See also United States v. Hood*, 593 F.2d 293, 296 (8th Cir.1979) ["danger of substantial prejudice"]; *United States v. Perrotta*, 553 F.2d 247, 249 (1st Cir.1977) ["genuinely prejudicial"]; *State v. Keliiholokai*, 58 Hawaii 356, 569 P.2d 891, 894–95 (1977); *Commonwealth v. Jackson*, 376 Mass. 790, 383 N.E.2d 835, 841 (1978) ["serious question of possible prejudice"]; *ABA Standards for Criminal Justice*, 2d Ed., 8–3.6(f) (1982) ["If it is determined that material disseminated during the trial goes beyond the record on which the case is to be submitted to the jury and raises serious questions of possible prejudice, the court may on its own motion or shall on the motion of either party question each juror, out of the presence of the others, about exposure to that material."].

The trial court did not ignore the potential for prejudice, however slight, which may have existed in this case. Some opening remarks were made by the court to the jurors en masse following Voeller's request, including:

> "You recall that during the examination of you by the attorneys, the Defense Attorney told you that during the trial it may be indicated to you that Mr. Voeller had been convicted of a felony on some previous occasion. And he indicated to you that if that fact came to your attention, you would assure him that your verdict in this case would be based only upon the evidence on this particular charge.

> "In other words, you were assuring us as well as the Defendant, that you appreciated—you understood that an accused is called to account only for the conduct with which he is presently charged in this particular case. He is not called to account for any previous conduct or quality of his entire life."

The trial court also repeated certain preliminary instructions given at the outset of trial concerning the basis of the jury's verdict:

"You must base your verdict on the evidence presented here in court. Put out of your minds anything you may have heard or read about this case out of court.

"I'll also say put out of your minds anything that you may have read or heard about this case or any other case that involves Mr. Voeller if you acquired that information out of court.

"The only information you are going to be dealing with is the oral testimony that comes with the witnesses and exhibits that are received in evidence.

"So the fact that any defendant has been arrested, confined or charged with this crime or any other crime, it gives no rise to inference of guilt, and is not to be considered by you as evidence."

The trial court then questioned the jurors individually, in the presence of the other jurors, as to whether or not each understood and would follow the court's instructions. Each juror responded in the affirmative. Voeller made no objection at trial to the manner in which the court ultimately handled the publicity issue. It cannot be said that the trial court did not comply substantially with Voeller's request to poll the jurors.

■ In the absence of contrary evidence, a presumption exists that a jury performed its duties in accordance with the law and were not influenced by outside events or evidence. *State v. Hepper*, 316 N.W.2d 338, 340 (N.D.1982); *Olson, supra*. There was no reason for the trial court to assume that any of the jurors had disregarded the admonishments or instructions given by the court. The jurors assured the trial court that they would "put out of their minds" anything they had read or heard about Voeller out of court and would base their verdict only on evidence presented in court. We said in *Olson, supra*, that in determining whether a defendant was deprived of a fair and impartial jury, the

court will not readily discount the assurances of a juror as to his impartiality:

"Courts look at the totality of circumstances to determine whether the trial was fair.... After trial and conviction, where the reasonable likelihood of prejudice has been refuted by voir dire examination, we give deference to the trial judge who has heard the responses made by the jurors." 274 N.W.2d at 193.

■ Voeller's conviction was not obtained in a trial atmosphere "utterly corrupted by press coverage" [*Murphy v. Florida, supra*, 421 U.S. at 798, 95 S.Ct. at 2035], from which we could presume unfairness of a constitutional magnitude. *State v. McLain*, 301 N.W.2d 616, 623 (N.D.1981). We can find no indication in the totality of the circumstances that Voeller's trial was not fundamentally fair. Nor can we conclude that the trial court abused its discretion in denying Voeller's motion for a new trial.

### Equivocation Instruction

■ Voeller contends that the trial court erred in refusing to give North Dakota Jury Instruction 1308 on equivocation, which he requested. That instruction basically provides that in cases where the evidence will admit of two constructions or interpretations, each of which appears reasonable and one of which points to the guilt of the defendant while the other points to his innocence, the jury must adopt the interpretation which will admit of the defendant's innocence and reject that which points to his guilt. *State v. Johnson*, 231 N.W.2d 180, 187 (N.D.1975).

■ The North Dakota pattern jury instructions are suggested instructions only, and are not mandatory. *Kaufman v. Meditec, Inc.*, 353 N.W.2d 297, 300 (N.D. 1984); *State v. Dachtler*, 318 N.W.2d 769, 774 (N.D.1982); *State v. Jacob*, 222 N.W.2d 586, 589 (N.D.1974). Instructions which fairly inform the jury of the applicable law are all that is required. *State v. Dachtler, supra*.

In our view, the facts in evidence were sufficiently covered by other instructions. The trial court instructed the jury regarding the presumption of innocence and burden of proof, the definition of reasonable doubt, the weight and credibility of evidence, the essential elements of the alleged offense, and the basis of the verdict. We do not believe it was error for the court to refuse to give the requested instruction on equivocation. *See State v. Skjonsby,* 319 N.W.2d 764, 774–75 (N.D.1982); *State v. Johnson, supra.*

The judgment and order denying the motion for a new trial are affirmed.

SAND, GIERKE, PEDERSON and VANDE WALLE, JJ., concur.