STATE of North Dakota, Plaintiff and Appellee,

v.

Scot A. HAUGEN, Defendant and Appellant.

Crim. No. 890048.

Supreme Court of North Dakota.

Nov. 20, 1989.

Brian D. Grosinger, Asst. State's Atty., Mandan, for plaintiff and appellee.

Deborah J. Carpenter, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

This is an appeal by Scot A. Haugen from a district court judgment finding him guilty of one count of accomplice to burglary, a Class C felony, in violation of Sections 12.1–03–01 and 12.1–22–02 of the North Dakota Century Code. Haugen contends that the evidence, particularly the evidence to corroborate the accomplice's testimony, was insufficient to sustain the conviction. We affirm.

On September 3, 1987, the Mandan Community Center was burglarized. Entry into the Community Center was accomplished by breaking a glass door on the south side of the building. Inside, several video machines had been pried open and the coins deposited in the machines had been stolen. Approximately $400 in quarters was taken from the video machines.

On September 4, 1987, the Mandan police department alerted area banks to be on the lookout for individuals who would be turning in large amounts of quarters for currency. During the day, two men in a vehicle entered the drive-up lane of a teller at the Highway 83 branch of United Bank in Bismarck. The teller gave the men a number of quarter wrappers. The two men took the wrappers and parked in the parking lot for approximately 20 minutes. One of the men, Donald Haff, left the car and walked into the bank to exchange $80 worth of quarters for currency. The police were notified, and Officer Donald Schaffer of the Bismarck police department arrived at the scene. Officer Schaffer detained Donald Haff and the driver of the automobile, Scot Haugen, until officers from the Mandan police department could arrive. Chief Rohr, Lieutenant Hoff, Deputy Chief Bullinger, and other law-enforcement officers from the Mandan police department eventually arrived at United Bank, conducted a brief investigation at the scene, and arrested Haff and Haugen. The car driven by Haugen, a 1977 red Corvette with personalized plates "RIP OFF," was impounded by the Mandan police. It was towed from United Bank to the secured police garage in Mandan. A warrant to search the vehicle was procured by the Mandan police. During the subsequent search of the vehicle by Deputy Chief Bullinger, various photographs were taken of the interior of the car and a number of items were seized from the passenger compartment,

marked as evidence, and placed into a police-evidence locker. Included in the items seized were a large number of rolled and loose quarters found wrapped in a white towel, a tire iron, and three screwdrivers.

Haff initially told law-enforcement officers that he had received a check from his mother as an early birthday gift, cashed it into quarters, and then later decided that he wanted paper currency. Eventually, however, Haff entered into an agreement with the Morton County State's Attorney's office in which the State's Attorney agreed that any charges against him would be dropped in return for his cooperation and testimony in the prosecution of Haugen. Haff told the State's Attorney that he and Haugen had planned the burglary of the Community Center. Haff indicated that he broke into the Community Center while Haugen acted as his driver and lookout. Haugen was subsequently charged with one count of accomplice to burglary, a Class C felony, under Sections 12.1-03-01 and 12.1-22-02, N.D.C.C.

During trial, Haff testified that on September 2, 1987, he and Haugen planned the break-in at the Community Center. Haff further testified that on September 3, 1987, he and Haugen traveled to Wing where Haugen's brother had a red Corvette in storage, and that, upon taking the vehicle, Haugen proceeded to drive it back to Mandan. Haff testified that, once in Mandan, he and Haugen stopped briefly at Corral Sales and then proceeded to the mobile home of Lanette Stuhmiller where they visited with Stuhmiller and Sharon Weber. Haff stated that upon leaving Stuhmiller's mobile home, he and Haugen drove the Corvette to the Mandan Community Center. Haff testified that at approximately 11:30 p.m. he broke through a glass door on the south side of the Community Center, entered the building, pried open the video machines with a tire iron and some screwdrivers, and removed the quarters from the machines. Haff stated that he placed the tools used during the break-in behind a seat in the Corvette. Haff noted that Haugen's job during the burglary was to drive the car and to serve as a lookout while he was inside the Community Center. Haff related that after the break-in he and Haugen drove to Bismarck where Haugen subsequently telephoned Weber and Stuhmiller. Haugen asked Weber and Stuhmiller to obtain a hotel room for himself and Haff. Haff testified that Weber and Stuhmiller obtained a room at the Comfort Inn, and that he and Haugen stayed at the Comfort Inn during the night. Haff stated that on the following morning, September 4, 1987, the two of them dumped all the quarters into a white towel from the Comfort Inn and left the hotel to obtain some wrappers for the quarters. Finally, Haff testified that he and Haugen exchanged approximately $80 worth of quarters for currency at a First Federal drive-up window, between $50 and $100 worth at the Bismarck State Bank, and that they were in the process of exchanging $80 worth at the United Bank when they were apprehended.

In addition to Haff's testimony, the State called a number of corroboration witnesses. The State called Weber and Stuhmiller, who testified that Haff and Haugen had visited with them prior to the time of the break-in, that Haff and Haugen were driving a red Corvette, and that they had obtained a hotel room for Haff and Haugen that evening. The State called a teller from First Federal, who testified that she received $80 worth of quarters from two men in a red Corvette on September 4, 1987, and identified the driver of the vehicle as Haugen. The State also called as a witness a teller from United Bank, who gave similar testimony. The State called Donna Gaukler, the recreational director at the Community Center, who testified as to the scene of the crime, including the broken glass door, the pried-open video machines, and the fact that approximately $400 in quarters was taken. Furthermore, the State called three police officers as witnesses. Generally, the officers gave testimony regarding the scene of the break-in, the arrest of Haff and Haugen, the search of the Corvette and seizure of the evidence therein, and the agreement reached with Haff concerning Haff's testimony and cooperation with the police. The

State introduced into evidence the $80 worth of quarters in Haff's possession at United Bank, a white towel containing various amounts of rolled and loose quarters, and the tire iron and three screwdrivers that Haff testified he used during the break-in.

After the State rested its case, Haugen moved for a directed verdict. Haugen claimed that, as a matter of law, the corroboration of Haff's testimony against Haugen was insufficient. Haugen's motion for a directed verdict was denied by the trial court. In his defense, Haugen called two witnesses. One witness testified that he was familiar with the red Corvette and that Haugen had taken it out of storage for some needed repairs. Haugen's second witness was his mother, who testified that Haugen was sporadically employed in the family's painting business and thus had other sources of income at the time he was alleged to be involved in the burglary.

The case was submitted to a jury, which returned a verdict of guilty. Haugen subsequently filed a timely notice of appeal.

On appeal, Haugen raises a number of related issues. First, Haugen claims that the trial court erred in denying his motion for a directed verdict because the corroboration evidence presented was insufficient as a matter of law. Haugen also argues, on the ground of relevancy, that the trial court erred in admitting the $80 worth of quarters found in Haff's possession at United Bank. He contends that the trial court improperly admitted the tire iron and screwdrivers into evidence because the State failed to prove a proper chain of custody. Finally, Haugen claims that there was insufficient evidence to sustain a guilty verdict.

First, Haugen contends that the trial court erred in denying his motion for a directed verdict because, as a matter of law, the corroboration of Haff's testimony was insufficient. Section 29–21–14, N.D. C.C., provides:

"A conviction cannot be had upon the testimony of an accomplice unless he [sic] is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

The purpose of corroborating evidence is to show that accomplices are reliable witnesses and worthy of credit. See *State v. Smith*, 238 N.W.2d 662 (N.D.1976). See also 1 *Underhill's Criminal Evidence* § 182 (6th Ed.1973). However, under Section 29–21–14 it is not necessary to corroborate every fact testified to by an accomplice. See *State v. Neurohr*, 376 N.W.2d 805 (N.D.1985); *State v. Thorson*, 264 N.W.2d 441 (N.D.1978); *State v. Smith*, *supra*. All that is required is that the evidence, circumstantial or otherwise, corroborate the testimony of an accomplice as to some material fact or facts, and tends to connect the defendant with the commission of the crime. See *State v. Neurohr*, *supra*; *State v. Lind*, 322 N.W.2d 826 (N.D. 1982); *State v. Thorson*, *supra*; *State v. Smith*, *supra*; *State v. Binns*, 194 N.W.2d 756 (N.D.1972). It is not necessary that the corroborating evidence be sufficient, in itself, to warrant a conviction or establish a prima facie case. See *State v. Thompson*, 359 N.W.2d 374 (N.D.1985); *State v. Lind*, *supra*; *State v. Thorson*, *supra*; *State v. Smith*, *supra*; *State v. Anderson*, 172 N.W.2d 597 (N.D.1969); *State v. Helmenstein*, 163 N.W.2d 85 (N.D.1968). Furthermore, the State need not point to a single isolated fact which is sufficient corroboration, as it is the combined and cumulative weight of the evidence other than the testimony of the accomplice witness which satisfies the statute. See *State v. Anderson*, *supra*; *State v. Pusch*, 77 N.D. 860, 46 N.W.2d 508 (1950). In cases involving the use of corroborative evidence, it is incumbent upon the trial court to first determine, as a matter of law, whether or not there is any evidence corroborating the testimony of the accomplice, and only after the court has found such corroborative evidence is it allowed to leave the question of the sufficiency of the corroborative evidence to the jury. See *State v. Garcia*, 425 N.W.2d 918 (N.D.1988); *State v. Thorson*, *supra*.

■ Haugen's primary contention regarding the State's corroborating evidence is that the evidence presented did not directly connect him with the break-in and burglary. In other words, Haugen argues that the State did not enter corroborating evidence showing that he actually stayed with the car and served as a lookout during the burglary. Thus Haugen asserts that the corroborative evidence submitted by the State was insufficient as a matter of law.

We disagree. "The corroboration [of an accomplice's testimony] need not directly link the accused to the crime." See *Byers v. State*, 641 S.W.2d 629, 634 (Tex.App. 1982). Rather, corroboration merely requires that there be evidence *"tending to connect the defendant with the offense committed."* [Emphasis in original.] *Byers v. State*, 641 S.W.2d at 633. See also 1 *Underhill's Criminal Evidence* § 183 (6th Ed.1973) [corroboration need not connect the defendant directly with the offense; it must merely tend to connect the defendant]. Indeed, the language of Section 29–21–14 requires only corroborative evidence which "tends to connect" a defendant with the commission of an offense. See Section 29–21–14. In this case there was an overwhelming amount of evidence presented by the State which corroborated the testimony of Haff and tended to connect Haugen with the break-in. Deputy Chief Bullinger testified that he had found a tire iron and three screwdrivers behind the passenger seat of Haugen's Corvette. Photographs of the Corvette's interior which were entered into evidence showed a white towel with the rolled and loose quarters on the floorboard in front of the driver's seat. Two bank drive-up tellers testified that Haugen was driving the red Corvette on the morning he and Haff were exchanging quarters for paper currency. Furthermore, Weber and Stuhmiller's testimony placed Haugen and Haff together in the red Corvette both before and immediately after the break-in of the Community Center. We conclude that, as a matter of law, there was sufficient evidence corroborating the testimony of Haff to allow the trial court to turn the case over to the jury.

■ Haugen's second argument is that the trial court erred in admitting into evidence the $80 worth of quarters found in Haff's possession at United Bank. Haugen contends that because there was no evidence connecting him with these quarters, and no evidence that the specific quarters were related to the Community Center burglary, the $80 in quarters was irrelevant under Rule 402, N.D.R.Ev., and, even if relevant, was prejudicial under Rule 403, N.D.R.Ev.

Rule 402, N.D.R.Ev., provides that "[a]ll relevant evidence is admissible," and that any "[e]vidence which is not relevant is not admissible." " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Rule 401, N.D. R.Ev.; *State v. Jungling*, 340 N.W.2d 681 (N.D.1983). Thus the test as to whether evidence is relevant or irrelevant is whether or not it would reasonably and actually tend to prove or disprove any matter of fact in issue. See *Okken v. Okken Estate*, 348 N.W.2d 447 (N.D.1984). However, even when evidence is found to be relevant under Rule 402, N.D.R.Ev., it can still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, ..." See Rule 403, N.D.R.Ev.; *Gerhardt v. D.L.K.*, 327 N.W.2d 113 (N.D. 1982). The initial determination of the relevancy of the evidence and the balancing between the evidence's probative value and prejudicial effect lies within the sound discretion of the trial court. See *State v. Schimmel*, 409 N.W.2d 335 (N.D.1987); *State v. Kringstad*, 353 N.W.2d 302 (N.D. 1984). On appeal, we will not overturn a trial court's decision regarding the admission or exclusion of evidence on the ground of relevancy unless the trial court abused its discretion. See *State v. Olson*, 290 N.W.2d 664 (N.D.1980).

In this case we do not believe that the trial court abused its discretion in admitting the $80 found on Haff at United Bank. As noted above, Section 29–21–14 requires the State to provide corroborative evidence

of the testimony of an accomplice before a conviction can be obtained because such evidence is necessary to demonstrate that the accomplice is a reliable witness who is worthy of credit. Here, the quarters were relevant because they provided corroboration of the testimony given by the accomplice, Donald Haff. Furthermore, the quarters were also relevant evidence because the testimony adduced at trial indicated that Haugen was in possession of some of the quarters. Deputy Chief Bullinger testified as to his observation that both Haff and Haugen were in possession of the quarters while in United Bank's parking lot. Moreover, a photograph of the interior of the red Corvette, taken during the search, indicated that the towel holding the rolled and loose quarters was located on the floorboard directly in front of the driver's seat. Testimony by the two bank tellers indicated that Haugen was the driver of the Corvette. Thus the quarters were relevant as corroborative evidence, and also probative as to whether or not Haugen was an accomplice to the break-in. We conclude that the trial court's admission of the $80 worth of quarters as both relevant and not unfairly prejudicial should be respected.

■ Haugen also contends that the trial court improperly admitted the tire iron and screwdrivers into evidence because the State failed to prove a proper chain of custody. In the past, this court has held that a proper chain of custody is a foundational requirement to account for the whereabouts of physical evidence up until the time it is admitted at trial to ensure that the physical evidence is in substantially the same condition at the time it is admitted into evidence. See *State v. Bohe,* 447 N.W.2d 277 (N.D.1989); *State v. Skjonsby,* 319 N.W.2d 764 (N.D.1982). An unbroken chain of custody is not necessarily a condition for the admissibility of evidence. If the trial court is reasonably satisfied that the item offered is what it is purported to be and that the condition of the item is substantially unchanged, it is properly admissible into evidence. See *State v. Bohe, supra; State v. Hartsoch,* 329 N.W.2d 367 (N.D.1983); *State v. Ber-*

*ger,* 285 N.W.2d 533 (N.D.1979). Any defect in the chain of custody goes to the weight of the evidence rather than the admissibility of the evidence. See *State v. Bohe, supra; State v. Hartsoch, supra.* The admission or exclusion of physical evidence is within the sound discretion of the trial court, and the trial court's decision thereon will not be disturbed on appeal absent an abuse of discretion. See *Victory Park Apartments, Inc. v. Axelson,* 367 N.W.2d 155 (N.D.1985); *State v. Berger, supra.*

■ In the instant case, Deputy Chief Bullinger testified that he searched Haugen's vehicle pursuant to a warrant, removed the tire iron and screwdrivers from behind the passenger-side seat, tagged the items, and placed them into a police-evidence locker. Bullinger testified that nobody had access to the stored evidence except for himself, Chief Rohr, and the property officer, Gary Ford. During trial, Bullinger identified the items seized and stated that the items had not changed in any manner from the time he placed them into the evidence locker.

We believe that Haugen's argument that the State failed to prove a proper chain of custody is without merit. The tire iron and screwdrivers were not items readily susceptible to alteration. Furthermore, Bullinger's testimony accounted for the whereabouts of the physical evidence up until the time it was admitted at trial, and indicated that the condition of the items was substantially unchanged. Thus we conclude that a proper evidentiary foundation was laid by the State and that the trial court did not abuse its discretion in admitting the physical evidence.

■ Haugen's final argument is that there was insufficient evidence to sustain the jury's guilty verdict. The standard of review which this court employs in cases challenging the sufficiency of evidence to sustain a conviction is well settled:

"We do not weigh or resolve conflicts in the evidence, nor do we judge the credibility of witnesses; those matters are for the trier of fact. We look only to the

evidence most favorable to the verdict and the reasonable inferences therefrom to determine if there is substantial evidence to warrant a conviction." *State v. Olson*, 372 N.W.2d 901 (N.D.1985), quoting *State v. Voeller*, 356 N.W.2d 115, 117 (N.D.1984).

*Accord, State v. Hartsoch, supra.*

In the instant case, all the material elements of the crime of accomplice to burglary were established by Haff's testimony. Furthermore, Haff's testimony was adequately corroborated by the direct testimony of two bank tellers, three police officers involved in the investigation of the burglary, Sharon Weber, and Lanette Stuhmiller, and by the introduction of various physical evidence seized from Haugen's vehicle pursuant to a search warrant. We have reviewed the entire record of this case, and, viewing the evidence in a light most favorable to the verdict, we conclude that there was substantial evidence to support the jury's verdict that Haugen acted as an accomplice to burglary.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.