STATE of North Dakota, Plaintiff
and Appellee,

v.

Robert HUFFMAN, Defendant
and Appellant.

Criminal No. 950136.

Supreme Court of North Dakota.

Jan. 30, 1996.

Monty J. Stensland (argued), Grand Forks, for defendant and appellant.

MESCHKE, Justice.

Robert Huffman appeals from a jury conviction of manufacturing, or possessing with intent to manufacture, a controlled substance. We conclude that an abused spouse retains sufficient common control over the marital home, when she returns for her personal belongings a few days after leaving it, to consent to an official search. We affirm denial of suppression and the conviction.

On July 6, 1994, Janet Huffman (Janet) called Benson County Sheriff Ned Mitzel and told him that her husband, Robert Huffman (Robert), had physically assaulted her. Mitzel went to the couple's rented farm home near Minnewauken and convinced Janet to leave for a safe-home in Devils Lake. On July 8, Janet rented an apartment in Devils Lake and also applied for a protection order.

The next day, Mitzel and another officer agreed to accompany Janet back to the farm home so she could retrieve some personal belongings. Robert was not present, although Janet later testified that she had asked Mitzel for Robert to be there. While Janet moved her personal belongings from the house to her van, Mitzel and the other officer remained in the yard. As she loaded the van, Janet told the officers that Robert was growing marijuana near the garden. When Mitzel told Janet that he could not find any marijuana, she pointed out some of it. Mitzel took two plants.

On July 11, a Ramsey County court issued an Adult Abuse Temporary Protection Order restraining Robert from contacting, harming, or threatening Janet, excluding him from her Devils Lake apartment, and giving Janet temporary custody of their two children. Also on July 11, Mitzel and a North Dakota Bureau of Criminal Investigation agent executed a search warrant at the farm and seized nearly 400 marijuana plants. Mitzel placed the plants in a large plastic bag, and hid the bag in an unlocked garage near his Minnewauken office. Nine days later, on July 20, Mitzel took the bag to a State laboratory in Bismarck for analysis; the lab confirmed the plants to be marijuana.

Robert was charged with violating NDCC 19-03.1-23 by manufacturing, or possessing with intent to manufacture, marijuana. Robert moved to suppress the evidence seized from the farm, arguing that Janet no longer had authority to consent to the warrantless search that located the marijuana. The trial court denied suppression, finding that Janet could validly consent to the search because of her "common authority over the marital residence." A jury found Robert guilty of the charged crime, and he was sentenced to three years in the penitentiary, with all but 120 days conditionally suspended for three years. Robert appeals.[1]

1. The Benson County State's Attorney failed to file a brief or otherwise appear to defend Robert's appeal. Therefore, the State's position on Robert's arguments is uncertain. In *State v. Lueder*, 267 N.W.2d 555, 556 (N.D.1978), we said that we look "with strong disfavor upon the irresponsible practice of filing a late brief." We look with even stronger disfavor upon the more irresponsible practice of not filing a brief at all. As we explained in *State v. Abrahamson*, 328 N.W.2d 213, 215 n. 1 (N.D.1982), an "appellate court does not serve as both a judge and an advocate for the appellee," and the "failure of the State's Attorney to file a brief places an undue burden on this court."

An appellee's failure to file a brief has "repeatedly been condemned by the courts." *Id.* (collecting cases). While a State's Attorney may not have a specific statutory duty to defend a criminal appeal here, we are unwilling to say that the decision to ignore a criminal appeal is within a prosecutor's discretion. A State's Attor-

ney is usually the sole advocate of the people of North Dakota in a criminal case, and the responsibility to defend a criminal appeal extends to even an appeal that the State's Attorney believes is without merit. In addition to placing an unnecessary burden on this Court, the failure to defend a criminal appeal represents a potential breach of the public's trust.

One sanction for the appellee's failure to file a brief is the loss of the opportunity to be heard at oral argument. NDRAppP 31(c). Yet, NDRAppP 13 authorizes us to "take any appropriate action" against someone who fails to comply with the rules.

"A lawyer shall act with reasonable diligence and promptness in representing a client." N.D.Rules of Professional Conduct Rule 1.3; *see also id.* Rule 1.3 cmt. ("A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf"; "[A] lawyer should carry

Robert argues that the trial court erred in denying suppression because Janet no longer possessed enough authority to consent to the warrantless search of the farm. We disagree.

■■■ "We affirm a trial court's decision on a motion to suppress unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless we conclude the decision goes against the manifest weight of the evidence." *State v. Hawley*, 540 N.W.2d 390, 392 (N.D.1995). While the court's legal conclusions are fully reviewable, we defer to its factual findings. *Id.* Here, therefore, we must affirm the trial court's determination that Janet could validly consent to the search because of her "common authority over the marital residence" if there is sufficient "competent evidence" to support that determination, and if that determination is not "against the manifest weight of the evidence."

■■■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches. "A reasonable search occurs when an appropriate person consents to the search." *State v. Zimmerman*, 529 N.W.2d 171, 174 (N.D.1995). An "appropriate person" includes one who "possesses common authority over ... the premises." *Id.*; *see also State v. Kunkel*, 406 N.W.2d 681, 683 (N.D.1987); *State v. Swenningson*, 297 N.W.2d 405, 407 (N.D.1980). As we explained in *Zimmerman*, 529 N.W.2d at 174, "[c]ommon authority is based upon mutual use of the premises by persons generally having control over or joint access to the property for most purposes."

Robert asserts that Janet was "no longer a coinhabitant who possessed the right to permit entry to the" farm, and that he had not "assumed the risk that his estranged wife, who no longer was his co[ ]inhabitant, would

permit others, including the police[,] to enter any common areas of the farmstead [that] he exclusively controlled," citing *Kunkel*, 406 N.W.2d at 683. To support this position, Robert urges that by establishing "a new residence at an apartment in Devils Lake," Janet "relinquish[ed] her status as a coinhabitant at the farmstead," and that her application for a protection order "evidences her intention to give up her mutual use of the property." Robert also points out that Janet "specifically testified [at the suppression hearing] that she felt she had no right to control of the farmstead residence, the outbuildings or the yard area for most purposes." Therefore, Robert argues, the "record does not support a finding that [Janet] had 'access or control for most purposes' or such mutual use of the premises that her husband assumed the risk of her consent to search on July 9, 1994." We reject Robert's position.

■■■ A spouse is certainly a person having "control over or joint access" to a marital home. Here, Janet fled the marital residence, sought a protective order, and rented a new residence because she was afraid of Robert and feared for her safety if she remained at the farm with him. We refuse to hold that a spouse forfeits all rights to the marital home, including the "common authority" to consent to a search there, when driven out by domestic violence.

A spouse's erroneous belief that she forfeited her rights to the marital home by fleeing is not determinative of whether that spouse actually retained "control over or joint access" to it. Therefore, whether she realized it or not, Janet still possessed "common authority" over the farmstead on July 9, 1994. This record completely supports the trial court's determination that she could validly consent to the warrantless search that discovered the marijuana.[2]

---

through to conclusion all matters undertaken for a client.").

2. Our holding here should not be understood to imply that an estranged spouse's common authority to consent to a search of marital property is unlimited. For example, the Colorado Supreme Court recently held that, "even in the absence of a restraining order, an estranged

spouse is not privileged or licensed to enter the separate residence of the other spouse so as to create a defense to charges of second degree burglary and first degree criminal trespass," where the lease to that separate residence was arguably "marital property" under Colorado law. *People v. Johnson*, 906 P.2d 122, 123 (Colo.1995). This illustrates that, in some factual circumstances, an estranged spouse may lack the actual

Robert also argues the trial court abused its discretion in admitting the bag of marijuana into evidence at trial because the "State failed to prove a proper chain of custody of the physical evidence contained and stored" in the bag. We disagree.

"[A] proper chain of custody is a foundational requirement to account for the whereabouts of physical evidence up until the time it is admitted at trial to ensure that the physical evidence is in substantially the same condition at the time it is admitted into evidence." *State v. Haugen*, 448 N.W.2d 191, 196 (N.D.1989); *see also State v. Bohe*, 447 N.W.2d 277, 279 (N.D.1989). The State need not prove an "unbroken chain of custody" before physical evidence can be admitted at trial. *Haugen*, 448 N.W.2d at 196. As we explained in *Haugen*, if the "trial court is reasonably satisfied that the item offered is what it is purported to be and that the condition of the item is substantially unchanged, it is properly admissible into evidence."

Robert relies on the testimony of Aaron Rash, the director of the Bismarck laboratory that analyzed the marijuana. Rash testified that the bag "was tied shut" when it arrived in Bismarck; that there ordinarily would be a "silage effect" if fresh "plants are kept sealed up in a plastic bag"; and agreed that these plants were not "fermented or becoming compost." Rash also testified that he believed "it would take several days," possibly five or six, before marijuana began to decompose in a tied bag, though Rash conceded he had "never done any experimental work to try to determine that."

Robert urges that the marijuana "was readily susceptible to alteration as it was kept in an unlocked and unsecure garage for a period of [nine] days." Based on Rash's testimony, Robert argues that it was "extremely unusual[ ] that the plants ... were not composted, decomposing, ... or turning to mush" when the bag reached Bismarck. Robert claims that, because the "condition of the [marijuana] should have been substantially changed when it reached ... Bismarck,"

the bag "must have been opened and receiving fresh air or oxygen from some other unknown individual while it was being stored in the unlocked garage." Therefore, Robert argues, the trial court abused its discretion in admitting the bag of marijuana into evidence.

While Robert offers an interesting theory, he misunderstands the effect of a potential defect in a chain of custody. "Any defect in the chain of custody goes to the *weight* of the evidence rather than the *admissibility* of the evidence." *Haugen*, 448 N.W.2d at 196 (emphasis added); *see also Bohe*, 447 N.W.2d at 279. In *State v. Lange*, 255 N.W.2d 59, 66 (N.D.1977), we quoted the Minnesota Supreme Court with approval:

> Admissibility should not depend on the prosecution negativing all possibility of tampering or substitution, but rather only that it is reasonably probable that tampering or substitution did not occur. Contrary speculation may well affect the weight of the evidence accorded it by the factfinder but does not affect its admissibility.

*State v. Johnson*, 307 Minn. 501, 239 N.W.2d 239, 242 (1976). Robert presented his theory to the jury, and the jury had the opportunity to weigh the asserted defect in the chain of custody when it considered the evidence.

The "admission or exclusion of physical evidence is within the sound discretion of the trial court, and the trial court's decision thereon will not be disturbed on appeal absent an abuse of discretion." *Haugen*, 448 N.W.2d at 196. We are satisfied that the trial court did not abuse its discretion by admitting the bag of marijuana into evidence.

We affirm Robert's conviction.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.

---

common authority to consent to a search of a separate residence, even though it was arguably

"marital property."